# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 04-957


**NORAN J. ROBIN, JR., ET UX.**

**VERSUS**

**ALLSTATE INDEMNITY COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 95474
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.


**AFFIRMED.**

**Maurice L. Tynes**
**Attorney at Law**
**4839 Ihles Rd**
**Lake Charles, LA 70605**
**(337) 479-1173**
**Counsel for: Defendants/Appellants**
**Allstate Indemnity Company**
**Trico Marine Operators, Inc.**
**Norman J. Breaux**

**William Neville Gee, III**
**Attorney at Law**
**P. O. Drawer 52048**
**Lafayette, LA 70505-2048**
**(337) 289-0808**
**Counsel for: Intervenor/Appellee**
**William N. Gee, III**

**A. Gretchen Heider**
**Attorney at Law**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**Counsel for: Defendant/Appellee**
**State Farm Mutual Auto Insurance Company**

**Craig Alan Davis**
**Attorney at Law**
**111 Mercury At.**
**Lafayette, LA 70503**
**(337) 231-5351**
**Counsel for: Plaintiffs/Appellees**
**Noran J. Robin, Jr.**
**Rebecca T. Robin**

**EZELL, JUDGE.**

Allstate Indemnity Company appeals a jury verdict awarding Noran J. Robin (Joe) damages for a back injury he suffered when Allstate's insured, Norman Breaux, rear-ended the truck driven by Joe. Allstate complains about evidentiary rulings of the trial court and about the amount of damages awarded by the jury. We affirm.

## FACTS

On September 3, 2000, Joe and his wife Rebecca were traveling with their friends, Michelle and Danny Dugas, to Mermentau to go crabbing. They were traveling in Joe's three-door Chevrolet truck, towing the Dugases' boat. At the time of the accident, there was a temporary red light erected on LA Highway 82 in Cameron Parish. The red light had been set up to control traffic while a bridge was being repaired.

Breaux was traveling behind the Robin vehicle. Breaux was employed by Trico Marine to drive boat crews to Cameron from Houma. He was driving a Ford six-passenger van when he rear-ended the Robin vehicle. As a result of the accident, Joe suffered an annular disruption at the L4-5 level which required fusion surgery by orthopedic surgeon Dr. John Cobb. He also had to have his lateral femoral cutaneous nerve surgically decompressed. At the time of trial, Joe was continuing treatment with Dr. Daniel Hodges for pain management and Dr. Ted Friedberg, a clinical psychologist, for depression.

Joe and his wife filed suit against Trico, Breaux, Allstate, and their own automobile insurer, State Farm Mutual Automobile Insurance Company, for the injuries they sustained as a result of the accident. Prior to trial, it was stipulated that Breaux was liable and in the course and scope of his employment with Trico. Trial on the issue of damages was held before a jury on January 13, 14, and 15, 2003.

1

After presentation of the Plaintiffs' case, the Defense presented no witnesses of its own. The jury returned a verdict awarding damages to both Joe and Rebecca. The Defendants filed a motion for judgment notwithstanding the verdict (JNOV) claiming the verdict in favor of Joe was unreasonably high. The trial court denied the JNOV on April 17, 2003, and this appeal by Defendants followed.

## EVIDENTIARY RULINGS

The Defendants have raised two issues involving evidentiary rulings by the trial court. The first issue raised by the Defendants is that the trial court erred when it excluded detailed evidence that the opinions of the Robins' economist, Douglas Womack, and their vocational rehabilitation counselor and certified life-care planner, Glenn Hebert, had not been accepted by other courts.

At trial the Defendants sought to introduce the opinions from cases rendered by the circuit courts and the supreme court in which the opinions of the experts were rejected for some reason. The trial court refused to allow the Defendants to introduce the actual opinions from the courts. The trial court reasoned that the facts and circumstances in the other cases would be different from the present case. The trial court did allow counsel for Defendants to question the two experts on whether their opinions have ever been rejected by other courts. Hebert replied that his opinion had been rejected four or five percent of the time by this court, and Womack responded that he did not know how many times his opinion had been rejected because he did not follow the cases after he had testified.

In *Rowe v. State Farm Mutual Automobile Insurance Company*, 95-669, p. 14 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 727, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611, this court, in reviewing matters concerning an expert doctor's bias, recognized that the "facts disclosed in other proceedings are admissible, [but] trial

2

and appellate courts' opinions as to those facts are not." We agree with the trial court's refusal to allow the Defendants to admit opinions from other proceedings in this case.

The Defendants have also complained that the trial court erred when it allowed Hebert to use statements made to him by Dr. Daniel Hodges in determining Joe's future medical expenses. The Defendants argue that medical testimony was necessary to establish what future medical care Joe will require.

Louisiana Code of Evidence Article 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Dr. Cobb had referred Joe to Dr. Hodges, a physiatrist, for pain management. Dr. Cobb testified that he would no longer need to see Joe unless Dr. Hodges discovered something that would require his attention.

Part of Hebert's expert qualifications included national certification as a life-care planner, a person who can tell you the future cost of medical treatment as outlined by physicians. In establishing a life-care plan, Hebert met with Dr. Hodges on December 15, 2002. Hebert completed a report on December 18, 2002, memorializing his meeting with Dr. Hodges and detailing the cost of the future medical care Joe required as outlined by Dr. Hodges. Dr. Hodges wanted Joe to remain on pain medication and anti-depressants indefinitely. Dr. Hodges would also require yearly x-rays of Joe to check the progression of arthritis and pain. Dr. Hodges indicated that he would have to evaluate Joe four times a year since he is on pain medication. These were the basis for Hebert's calculation of Joe's future medical expenses. These future medical needs were confirmed by Joe's testimony concerning

3

his future medical care as discussed with Dr. Hodges.

As explained by this court in *Blocker v. Rapides Regional Medical Center*, 03-745, p.4 (La.App. 3 Cir. 12/23/03), 862 So.2d 1220, 1223, *writ denied*, 04-215 (La. 3/26/04), 871 So.2d 351, "[f]uture medical care need not be supported by expert medical testimony in cases where the medical care is obvious and necessary." We find that the information provided by Dr. Hodges to Hebert is the type of information reasonably relied upon by life-care planners in making decisions about determining the costs of the client's future medical care and was, therefore, admissible under La.Code Evid. art. 703. In this case, Joe's future medical needs are not so complicated that additional medical testimony was needed.

## JURY VERDICT

Allstate alleges that the trial court erred in denying its motion for JNOV, but abandons that argument by referring this court to its memorandum supporting the JNOV at the trial court level. Instead, Allstate chooses to focus on the jury verdict awarding damages itself, which we will now address.

In *Theriot v. Allstate Insurance Company*, 625 So.2d 1337, 1340 (La.1993) (alteration in original), the supreme court restated the law concerning appellate review of damage awards as follows:

> Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1977). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient," *Reck v. Stevens*, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured

4

plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. *See Reck v. Stevens*, *supra*; *Cariere v. State Farm Insurance Co.*, 467 So.2d 867 (La.App.2d Cir.1985).

Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. *See Reck v. Stevens, supra; Wactor v. Pickens Lumber Co.*, 505 So.2d 815 (La.App.2d Cir.1987), *writ denied*, 508 So.2d 827 (La.1987). In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court. *American Motorist Insurance Company v. American Rent-All, Inc.*, 579 So.2d 429 (La.1991); *Scott v. Hospital Service District No. 1 of the Parish of St. Charles*, 496 So.2d 270 (La.1986); *Carollo v. Wilson*, 353 So.2d 249 (La.1977); *Coco v. Winston Industries, Inc., supra.*

**Future Medical Care**

Reviewing the evidence as to Joe's future medical needs as testified to by Hebert, we find that there was sufficient evidence for the jury to award $50,000 for future medical care. It is true that Dr. Cobb released Joe from his care, but Joe continues to take medication and see Dr. Hodges for his continuing pain problems. We do not find this award unreasonable given the fact that Douglas Womack, the economist, testified that scope of future medical expenses ranged from a low value of $151,107 to $221,917, based on the cost figures he was provided. Clearly, the jury exercised its discretion and determined that Joe would have future medical needs to some degree, and we agree.

**Future Physical and Mental Pain and Suffering**

Allstate also complains about the jury's award of $175,000 for future physical and mental pain and suffering. Allstate claims that the record does not support such an award because Joe's future pain and suffering will be minimal.

5

Concerning awards of general damages the supreme court in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994), stated that "the discretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." The court further noted that "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.*

Joe admitted that he feels better after surgery but testified that he still has some pain problems. Joe also explained that sitting or standing too long causes him problems. He further stated that cold weather really bothers him.

Dr. Cobb testified that Joe now has a twelve to fifteen percent total body physical impairment. His perception of Joe was that he never exaggerated his symptoms. Dr. Cobb agreed that Joe would have good and bad days.

The record also reveals that Joe has suffered mentally as a result of the accident. Before the accident, Joe worked as a paint and body technician, which he had done for many years. As a result of this accident he cannot return to this job. His future job prospects are limited because he functions at a borderline range of intelligence. The accident also limited Joe's ability to lift and play with his young children and do other things that he enjoyed. After the accident, Joe became depressed because of his limitations.

Joe and his wife also have to deal with problems the injuries have caused in their marriage because he cannot help out around the house. They also had to sell their house and boat and cash in a 401k plan, so they could have the money for living expenses. Joe's wife explained that he does not laugh very much anymore. Joe's

6

friend, Danny Dugas, who was in the truck with him when he was injured, testified that Joe is not himself anymore.

Joe was referred to Dr. Ted Friedberg, a clinical psychologist, who diagnosed him with moderate to severe depression characterized by a lot of chronic sadness and feeling of hopelessness about the future. Dr. Friedberg testified that he is still counseling with Joe and working with him on different ways to cope with daily functioning.

Given this evidence on both continuing physical and mental pain and suffering, we do not find that the jury abused its discretion. Joe continues to have pain and mental problems as a result of the accident and is continuing to be treated for both. We uphold the award of $175,000 for future physical and mental pain and suffering.

**Past Loss of Income**

The jury also awarded $75,000 to Joe for past loss of income. Allstate claims that past loss of income should be reduced to $53,295, or at most $63,093.

Dr. Womack calculated Joe's past loss of income using several options. At the time of trial, 2.36 years had passed since the accident. He determined that $13.00 an hour for a paint and body technician was a good rate because it was between what Joe made at Duhon's Paint and Body Shop at $14.00 an hour and what he made at Arceneaux Ford at $12.00 an hour. This calculated into a yearly loss of $27,040 if Joe worked full time. Dr. Womack also took into consideration that Joe played as a part-time drummer with a band on evenings and weekends. Based on Hebert's vocational report, Joe's earnings from the band averaged between $6,000 and $10,000 a year, so Dr. Womack used a middle-range figure of $8,000.

Using these figures, Dr. Womack calculated that Joe could have earned $61,420 as a paint and body man up to trial and $18,080 as a part-time drummer. The

sum of these two numbers is $79,500.

We find no error in the jury's award of $75,000 for past loss of income. Obviously, the jury found Joe's testimony about his earnings as a part-time drummer credible, and we cannot say that it was manifestly wrong.

**Loss of Future Earning Capacity**

Finally, Allstate complains about the award of $900,000 that the jury made for Joe's loss of future earning capacity. Allstate argues that figures used by Womack in making his determinations were exaggerated.

In determining an award for loss of future earning capacity, we are guided by certain well-established legal principles. This court has stated:

> Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

*Fitch v. Vintage Petroleum, Inc.*, 94-346, p. 11 (La.App. 3 Cir. 11/2/94), 652 So.2d 998, 1003 (*quoting Veazey v. State Farm Mut. Auto. Ins.*, 587 So.2d 5, 7 (La.App. 3 Cir. 1991)).

Dr. Womack performed several calculations utilizing different factors in determining Joe's loss of earning capacity. All calculations used a 3.5% growth rate due to inflation and a 4.4% factor for interest that could be earned on any sum of money that might be awarded to Joe. However, different numbers were used concerning the number of years that Joe might have continued to work depending on whether statistics for work-life expectancy were used, 25.92 years, or whether Joe worked until he could retire with social security, 32.95 years. Different numbers were also used concerning Joe's annual earnings. Hebert testified that Joe's earning capacity was higher than his actual earnings which would be $32,000 as opposed to

8

his actual earnings of $27,040 based on full-time employment at $13 an hour.

Using Joe's actual earnings but projecting it out for 32.95 years, as the number of years until Joe could collect social security, resulted in a loss of earning capacity for Joe of $915,521.

We also observe that this calculation took into consideration that Joe could earn wages returning to work part-time at a minimum wage job. Due to his injury, Joe can now only work at light-duty employment. Hebert testified that the jobs that are now available to Joe are in an industry that does not hire full-time employees because it does not want to pay for benefits. Hebert also stated that the hardest people to put back to work are those with back injuries because employers are reluctant to hire them. We find that the jury's award for loss of future earnings was reasonably based on the evidence in the record.

For the reasons expressed in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Allstate Indemnity Company.

**AFFIRMED.**