ROLAND L. BELSOME, Judge.
_JjThis appeal arises from a jury verdict in favor of the plaintiff, Kelsey Cooper, for injuries he sustained while working aboard the M/V ROBERT J. BOUCHARD. The jury found Marine Systems, Inc. (MSI) and Bouchard Coastwise Management Corp., Bouchard Transportation Co., Inc., Tug Robert J. Bouchard, Inc. and Interested Hull Underwriters (collectively Bou-chard) equally liable for Mr. Cooper’s damages. MSI and Bouchard appealed the judgment and the plaintiffs filed an answer and cross appeal. For the reasons that follow, we affirm in part; reverse in part; and render.
Mr. Cooper was the chief engineer aboard the ocean-going tug ROBERT J. BOUCHARD when the main engine failed causing an explosion and fire in the engine room. As a result of the explosion, Mr. Cooper suffered third degree burns to 32% of his body and second degree burns to 4% of his body. The severity of Mr. Cooper’s injuries required approximately 28 surgeries and extensive physical therapy.
Bouchard was the owner and operator of the ROBERT J. BOUCHARD at the time of the explosion. The failed engine, which caused the explosion, had been l2overhauled and serviced by MSI using remanufactured parts supplied by WRI.[1] Subsequent to the original overhaul, MSI serviced the engine in April and November of 2004. The November 2004 service occurred just three months before the explosion. Following the explosion, suit was filed against Bouchard, MSI, and WRI. Additionally, Bouchard filed cross claims against MSI and WRI for damages to its tug.
During trial, several theories were presented to establish the cause of the engine failure: 1) Bouchard’s failure to properly maintain and service the engine; 2) MSI’s failure to properly assemble and test the engine; and/or 3) WRI’s failure to properly remanufacture the engine parts in keeping with specifications. When the trial on the merits concluded, all claims against WRI were dismissed with prejudice. Judgment was rendered in favor of Mr. Cooper and against MSI and Bouchard for $7,248,935.[2] There was also judgment in favor of Bouchard on the Across claim against MSI.[3] Appeals and cross-appeals were filed by Bouchard and MSI, and the plaintiffs answered MSI’s appeal.

MSI’s Issues for Review

On appeal, MSI asserts two assignments of error for this Court to review: 1) the jury’s finding that MSI was liable for the *4 explosion was contrary to both the law and the evidence; and 2) the jury’s award of $648,935 in future medical expenses to Mr. Cooper was not supported by the record and should be reversed.

Bouchard’s Issues for Review

Bouchard asserts that 1) the jury’s 50% fault to Bouchard was not supported by the record; and 2) the jury erred in failing to award Bouchard reimbursement of the maintenance and cure paid for its injured employee.

Plaintiffs’ Cross-Appeal Issue for Review

As cross-appellant, the Plaintiffs contend that the jury erred in only assessing 50% fault to MSI.

Allocation of Fault

The jury found, after being presented nine days of testimony and evidence, negligence on the part of MSI and Bouchard; and concluded that they shared liability for Mr. Cooper’s damages equally. Both MSI and Bouchard take issue with the jury’s allocation of fault. This Court applies the manifest error standard of review to the fact finder’s determination of whether or not a party has borne his burden of proof by a preponderance of the evidence. See Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90. On review, a “court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ |4or unless it is ‘clearly wrong,’ ” and “where two permissible views of the evidence exists, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Stobart v. State, 617 So.2d 880, 882-83 (La.1993) (citations omitted).
Following the tragic explosion that nearly killed Mr. Cooper, the ROBERT J. BOUCHARD was towed to a shipyard in Staten Island, New York. Once at the shipyard, Bouchard began its investigation into the cause of the engine failure and explosion. To lead the investigation, Bou-chard retained diesel engine expert, Lee Swanger, Ph.D. Bouchard also requested the presence of MSI’s lead service representative, Skeeter Bailey. At that time, Mr. Bailey was evaluating the damages to formulate a cost estimate to rebuild the engine.
Together, Dr. Swanger and Mr. Bailey identified parts, took photographs, and pulled parts out of the engine. The parts that were removed from the engine were placed into a container that was stored in a Bouchard warehouse. Mr. Bailey accessed the box shortly after it had been stored to further examine the parts and to take additional photographs. Unfortunately, over the course of the litigation certain key parts of the engine went missing.[4]
During his initial investigation, Dr. Swanger identified fatigue fractures in the “slipper foot” of the number two connecting rod, which he opined was a possible cause of the engine’s failure. He found that the “heel” and “tow” of the “slipper foot” broke away from the shaft of the connecting rod. Dr. Swanger’s testimony related this type of engine failure to “geometric mismatch” of the engine’s components, which was either caused by an improper curvature of the [ Bconnecting rod or mismatching of parts and improper assembly. He explained that an improper curvature in the connecting rod would have occurred during the remanufacturing of the rod, while the faulty mismatch of the parts would occur during the assembly of the engine,
*5 Dr. Swanger testified as to actions that could have been taken by MSI in the assembly stage of the overhaul to identify a geometric mismatch of the engine’s components. Although he claimed that the geometric mismatch could occur from an incorrectly remanufactured rod or improper installation, Dr. Swanger’s testimony was clear that there were tests that could have been performed by MSI to ensure the surfaces of the components were touching in the appropriate places.[5] His opinion was that “it is incumbent upon the organization or the person who is assembling an engine out of machined parts, purchased parts, reused parts — It’s incumbent on that person to do all the checking.” Through the testimony of MSI’s representative, Mr. Bailey, the jury was informed that the tests suggested by Dr. Swanger were not performed by MSI’s mechanics. Trial testimony also established that customarily, such overhauls last for 28,000 to 30,000 usage hours. The engine at issue in this litigation exploded at approximately 14,000 usage hours.
The plaintiffs’ other expert, Thomas Shelton, Ph.D., referred to the cause of the engine failure as “geometric misalignment”.[6] He claimed that the geometric misalignment lead to a lubrication issue which resulted in the engine exploding. |fiDr. Shelton opined that the failure occurred in the number two cylinder and was either caused by improper installation of the basket assembly and/or a defect in the blade rod or upper shell bearing. He did however state that he was unable to determine which of the two were more probable, due to the extent of the mechanical damage. Nevertheless, Dr. Shelton was also of the opinion that MSI was in the best position, as the assembler, to identify the problem.
MSI presented expert marine surveyor, Paul Deister, to testify on its behalf as to the cause of the engine failure. Mr. Deis-ter’s theory was based on lubrication issues brought about by a misalignment of engine components caused by engine vibrations that lead to engine bolts backing out of their component parts. The component part that the bolts backed out of is known as the “P-pipe” or “P7tube”, which is a small pipe or tube that sprays oil into the cylinder. Although he concluded that in his opinion that the condition developed because Bouchard did not comply with industry standard maintenance requirements, he also admitted that MSI should have noticed signs of engine vibration when the engine was serviced at 9500 hours in April 2004.[7]
By deposition, MSI offered the testimony of Geoff Webster. Mr. Webster’s opinion was that faulty lubrication in the number two cylinder caused by either contaminated oil clogging the engine’s P-pipe or the complete loosening and misdirection of the P-pipe itself caused the engine to fail. His testimony suggested global oil failure due to negligent maintenance or operation on the part of Bou-chard. That notion was discredited by Mr. Deister, MSI’s other expert. Mr. | yDeister did, however, testify that in his opinion, Bouchard did not properly keep *6 up with the industry standard maintenance requirements.
In Louisiana, the fact finder is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. See, Lightell v. Couvillion, 99-1597 (La.App. 4 Cir. 2/16/00), 757 So.2d 39. The fact finder may accept or reject in whole or in part the opinion expressed by an expert. Green v. K-Mart Corporation, 03-2495, p. 5 (La.5/25/04), 874 So.2d 838, 843 (citing Lirette v. State Farm, Ins. Co., 563 So.2d 850, 855 (La.1990)). The effect and weight to be given expert testimony is within the broad discretion of the fact finder. Gulf Outlet Marina, Inc. v. Spain, 02-1589, p. 13 (La.App. 4 Cir. 6/25/03), 854 So.2d 386, 394 (citing Williams v. Rubicon, 01-0074 (La.App. 1 Cir. 2/15/02), 808 So.2d 852.).
A review of the record in this matter indicates that the jury was presented with sufficient testimony and evidence to create a reasonable basis for the verdict. The evidence established that, as the owner and operator of the tug, daily maintenance and periodic inspections would be Bouchard’s responsibility, while more comprehensive inspections were performed by MSI. Further, it is undisputed that neither party identified a problem with the engine prior to its failure, which resulted in the explosion. This Court finds that the jury was reasonable in its determination that Bouchard and MSI were negligent, and further finding that each party bore 50% of the liability. In light of the evidence and testimony presented, there is a reasonable factual basis for those findings and they will not be disturbed on appeal.

Future Medicals

On appeal, MSI is also challenging the jury’s award of future medical expenses in the amount of $648,935. Again, MSI argues that the evidence does not 1 ssupport the jury’s finding. More specifically, MSI maintains that the evidence presented was not “medical evidence” and only medical evidence can establish future medical expenses.
It is irrefutable that Mr. Cooper was nearly killed when the engine on the ROBERT J. BOUCHARD exploded. Although he escaped death, Mr. Cooper suffered horrific burns to a large percentage of his body creating extensive physical scarring and life-long psychological and physical injuries. To date, the rehabilitation from his injuries has included approximately 28 surgical procedures. At trial, the plaintiffs presented Elizabeth Bauer, who was qualified as an expert in vocational rehabilitation counseling and life care planning, to testify as to Mr. Cooper’s future medical needs, and forensic accountant, John Ther-iot, to calculate the present value of those medical expenses.
MSI suggests that future medical expenses can only be established through the testimony of physicians.[8] We disagree.
Ms. Bauer based her assessment of Mr. Cooper’s future needs on interviews with Mr. and Mrs. Cooper, medical records, doctor’s reports and a vocational report.[9] In creating her comprehensive life care plan, Ms. Bauer took into consideration Mr. Cooper’s current and future needs that have been created by his being a victim of the explosion. At the time of the report in 2007, Mr. Cooper was only 39 *7 years of age. Consequently, he will have to incur the ongoing expenses of care and treatment for many years. Included in those expenses are doctors’ visits, future surgeries/procedures and associated hospital stays, physical therapy, occupational therapy, counseling, prescription and over-the-counter medications, 19and supplies. Taking all of this into account, her life plan report for Mr. Cooper suggested his annual future medical costs would be $4,800-$7,500.
Being an expert life care planner enables Ms. Bauer to estimate future costs of medical treatment that has been outlined by treating physicians. In accordance with Louisiana Code of Evidence article 703,[10] Ms. Bauer gave extensive testimony as to the sources she used in developing Mr. Cooper’s life care plan, including physicians’ reports and consultations. Ms. Bauer’s findings, pursuant to her review of Mr. Cooper’s treating physicians’ opinions, were further supported by the testimony of Mr. and Mrs. Cooper.
Similarly, in Robin v. Allstate,[11] the Third Circuit allowed a qualified life care specialist to establish future medical expenses for the plaintiff. As in this case, the expert established that his plan was based on medical treatment recommended by a treating physician and the Court found that under La. C.E. art. 703, the evidence was admissible. The Robin Court explained that “[fluture medical care need not be supported by expert medical testimony in cases where the medical care is obvious and necessary.” Id., p. 4, 889 So.2d at 454 (citing Blocker v. Rapides Regional Medical Center, 03-745, p. 4 (La. App. 3 Cir. 12/23/03), 862 So.2d 1220, 1223, writ denied, 04-215 (La.3/26/04), 871 So.2d 351. (Future medical expenses awarded based on testimony given by plaintiff and his son regarding replacement prosthetic.)). Given the extent of Mr. Cooper’s welljdocumented10 and observable injuries, he has obvious and necessary future medical needs that are well supported by the record.
Based on Ms. Bauer’s report, forensic accountant, Mr. Theriot, quantified the future medical costs for the jurors. Mr. Theriot explained computations that were used to determine the amount of present day dollars that will be needed to sustain Mr. Cooper’s future medical costs. By using Ms. Bauer’s report, Mr. Theriot valued Mr. Cooper’s future medical expenditures at $673,935.
After deliberating, the jury returned a verdict that awarded $648,935 to Mr. Cooper for future medical expenses.[12] We find the award for damages to be reasonable and sufficiently supported by the evidence.

Reimbursement of Maintenance and Cure

The payment of maintenance and cure by Bouchard has not been disputed. Bouchard maintains that the jury’s verdict finding MSI 50% at fault for Mr. Cooper’s damages warranted a 50% reimbursement to Bouchard of the maintenance and cure *8 paid on Mr. Cooper’s behalf.[13] Thus, the jury was clearly wrong in failing to make an award for reimbursement. We agree.
It is well established that an employer who provides maintenance and cure for his employee, has a right to reimbursement from a third-party tortfeasor. See, e.g., Complaint of Liberty Seafood, Inc., 38 F.3d 755, 757 (5th Cir.1994). Bouchard’s corporate representative, through deposition testimony, verified that Bouchard had paid and was continuing to pay maintenance and cure to Mr. Cooper. At trial, a detailed accounting summarizing all maintenance and cure Inpayments was entered into evidence.[14] Mr. and Mrs. Cooper also testified that Mr. Cooper’s medical expenses had been paid by Bouchard. MSI did not present any evidence to refute the testimony or accounting. On appeal, MSI only submits that, based on the evidence, the jury’s conclusion was reasonable.
Considering the uncontroverted evidence presented, we find that the jury was clearly wrong in not providing for a 50% reimbursement of $1,247,501.07 in conjunction with their conclusion that MSI bore 50% of the fault for Mr. Cooper’s damages. Accordingly, we reverse the jury’s finding in this respect and render an award of $623,750.53 against MSI and in favor of Bouchard for reimbursement of maintenance and cure paid on Mr. Cooper’s behalf.

Conclusion

For the reasons discussed, this Court affirms the award of damages in favor of Mr. Cooper and against Bouchard and MSI. This Court reverses the jury’s finding regarding Bouchard’s claim for reimbursement against MSI for the payment of maintenance and cure and render judgment in favor of Bouchard and against MSI in the amount of $623,750.53. In all other respects, the judgment is affirmed. Accordingly the judgment is affirmed in part, reversed in part, and rendered.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED

.Western Reman, Inc., Remy International, Inc. and Remy, Inc. are collectively referred to in the opinion as WRI.

.The jury found MSI to be 50% liable and the Bouchard defendants to be 50% liable. The awarded damages were as follows:
As to plaintiff Cooper against Marine Systems:
Past pain and suffering 750,000.00
Future pain and suffering 750,000.00
Scarring and disfigurement 1,000,000.00
Future medical expenses 324,467.50
Past lost wages 200,000.00
Future loss of earnings 600,000.00
As to plaintiff Cooper against Bouchard defendants:
Past pain and suffering 750,000.00
Future pain and suffering 750,000.00
Scarring and disfigurement 1,000,000.00
Future medical expenses 324,467.50
Past lost wages 200,000.00
Future loss of earnings 600,000.00

.The jury found for the Bouchard plaintiffs against Marine Systems: $600,000.00 in damages. [The jury awarded $600,000 for the damage to the tug but the 50% allocation of fault resulted in a $300,000 award.]

. At trial, MSI alleged spoliation, but was unable to prove intentional or negligent destruction on the part of Bouchard.

.Dr. Swanger referenced two methods that can detect alignment problems. The first test discussed was the "bluing test”, which uses the transfer of blue ink to determine if the entire surface of the bearing is making contact. Next, he suggested the user of feeler gauges for larger gaps.

. Dr. Shelton was qualified as an expert in mechanical and metallurgical engineering.

. As previously noted, MSI did maintenance and work on the engine in April and November of 2004. There was no mention of excessive vibration on either date.

. MSI did not present any witness or evidence to rebut the testimony of plaintiffs' experts, Ms. Bauer and Mr. Theriot.

. Within those documents were medical records for doctors specializing in optometry, plastic surgery, orthopedics, and physical therapy. Ms. Bauer also consulted with hand surgeon, Dr. Harold Stokes.

.La. C.E. art. 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

. Robin v. Allstate, 04-957, (La.App. 3 Cir. 12/8/04), 889 So.2d 450.

. The jury is given vast discretion in its award of damages. See, Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).

. Maintenance and cure are the seaman’s right to receive food, lodging, and necessary medical services.

. The account summary totaled $1,247,501.07.