Judge Roland L. Belsome
| iThis appeal arises from the trial’ court proceedings of a quick-take expropriation of Violet Dock Port, L.L.C’s (“VDP”) property initiated by and for the benefit of the St. Bernard Port, Harbor & Terminal District (“the Port”). The subject property consists of approximately 75 acres of land, 22' acres of batture, 38.5 acres of upland property, and 4,238 linear feet of frontage along the Mississippi River as well as a 4-acre parcel across La. State Hwy. 46 (“the Property”).
VDP was a privately owned industrial port facility with one mile of water frontage on the Mississippi River in St. Bernard Parish. VDP built the facility, which included five heavy-duty docks and related infrastructure. VDP’s improvements were *630 designed to berth and service ocean-going ships for the United States Navy. VDP had held contracts with the Navy for many years. The docks were also used for topside repair, and commercial vessel lay-berthing.

Procedural History

In 2007, the Port offered to purchase the Property and VDP declined. After years of failed negotiations, the Port expropriated the Property on December 22, 2010, and deposited the estimated just compensation of $16,000,000 into the ^registry of the court. In response, VDP challenged the public purpose of the expropriation. After conducting an evidentiary hearing, the trial court found that the taking served a public purpose.[1] Later, the Port filed an Amended Petition for Expropriation in which it added claims against VDP alleging damages for debris material being buried on the Property, among other things. Based on those claims, the trial court ordered that $1,900,000 of the $16,000,000 was to remain in the registry of the court. VDP withdrew the balance of the funds.
The matter proceeded to trial to determine the value of the Property as well as the Port’s claim for damages on the allegations that debris had been dumped and buried on the Property after the expropriation date. The trial court rendered its judgment finding that the value of the Property was $16,000,000, the trial court denied the Port’s claim for damages for debris removal, and VDP was awarded judicial interest on the $1,900,000 in funds that had remained in the registry of the court.[2] Subsequent to the judgment being issued, both the Port and VDP filed motions to recover attorney’s fees and costs. The trial court denied both parties’ motions.[3] This appeal and cross-appeal followed. The appeals challenge each of the three judgments.

Assignments of Error

On appeal VDP maintains that the trial court erred in finding that the taking was constitutional and thereafter finding the value of the Property to be $16,000,000. In addition, VDP asserts that if this Court were to overturn either of those rulings by the trial couit it would be statutorily eligible for attorney’s fees and costs.
|sThe cross-appeal filed by the Port contends that the trial court erred in denying its claims for damages regarding buried debris, erred in awarding judicial interest on the $1,900,000 that remained in the registry of the court, erred in excluding testimony of an expert economist, and also erred in failing to award costs and attorney’s fees.

Standard of Review

In an expropriation case, the trial court’s factual determinations are subject to the manifest error standard of review, while legal determinations are reviewed de novo, and evidentiary rulings are subject to the abuse of discretion standard.[4]

March 21, 2012 Judgment (Public Purpose)

Through the Louisiana Constitution and state statutes, the Port is granted the express right to expropriate private property.[5] For the taking to be constitutional it must be for a public purpose and the land *631 owner must be paid just compensation.[6] After conducting an evidentiary hearing on the issue of public purpose only, the trial court determined that the Port had established a valid public purpose for the expropriation of the Property pursuant to La. R.S. 34:1705 and 1708. More specifically, the trial court found that the “[ejxport of goods and commodities through the port is one of the basic industries of St Bernard Parish. The acquisition of the Violet terminal would be a logical extension of port services in St. Bernard.” The trial court also reasoned that the contemplated construction and use of the property would bring employment to the citizens of St. Bernard Parish.
LVDP argues that the Port’s expropriation was not for a public purpose and therefore violated its constitutional protections as a private landowner. Specifically, it maintains that the trial court erred in upholding the Port’s taking of the Property because the expropriation was in violation of La. Const. Art. I, §§ 4(B)(1), (2), (3), and (6),[7] La. R.S. 34:1708[8] and U.S. Const. amend. V.[9] |SVDP cites to several constitutional violations, but more specifically contends that the taking did not meet a public purpose and the Port was not *632 authorized to expropriate the property. VDP argues that the real purpose for the taking was so the Port could continue to operate its layberthing and cargó facility and obtain the Navy contracts in violation of La Const. Art. I § 4(B)(6). For these reasons, VDP claims the taking was unconstitutional. We disagree.
The State of Louisiana created the Port as a public corporation and political subdivision to regulate domestic, coastwise, and intercoastal commerce and traffic.[10] La.. R.S. 34:1705[11] establishes the authority and jurisdiction of the Port, and 1708[12] provides the manner in which the Port can acquire property. The | r,Legislature has bestowed broad discretion and authority upon the Port to support its, efforts to maintain and further development of its operations.[13]
The constitutional rights of Article I, § 4-that VDP maintain were violated, are subject to the exceptions provided in Article VI, § 21. Section 21 provides-in pertinent part:
(A) Authorization. In order to (1) induce and encourage the location of or addition to industrial enterprises therein which would have economic impact upon the area and thereby the state, (2) provide for the establishment and furnishing of such industrial, plant, (3) facilitate the *633 operation of public ports, or (4) provide movable or immovable property, or both, for pollution control facilities, the legislature by law may authorize, subject to restrictions it may impose, any political subdivision, public port commission, or public port, harbor, and terminal district to:
* * * *
(b). acquire, through purchase, donation, exchange, and expropriation', and improve industrial plant buildings and industrial plant equipment, ma-chinerg, furnishings, and appurtenances, including public port facilities and operations which relate to or facilitate the transportation of goods in domestic and international commerce; and

(c) sell, lease, lease-purchase, or demolish all or any part of the foregoing

La. Const. Art. VI, § 21 (emphasis added).'
The trial court was presented evidence of the Port’s intention to maintain the current use of the Property initially, with a comprehensive plan to expand the 17facility to include a dry and liquid bulk cargo operation. In Board of Comm’rs of Port of New Orleans v. City of New Orleans, this Court acknowledged the important role that ports fulfill for the State and the local communities stating, “a healthy port generates local jobs and industry and associated local consumption.”[14] This Court further recognized that the health of the Port rests with its ability to be competitive and the maintenance and development of the Port provides “a great public benefit to the people of Louisiana.”[15]
Although the authority granted to the ports of Louisiana in the expropriation of private property is exceptionally broad, it is supported by the constitution and statutes of the State. Accordingly, we do not find that the, trial court was manifestly erroneous or committed legal error in determining that the Port’s expropriation of the Property was for a public purpose.

July 31, 2015 Judgment (Property Valuation/Debris Damages)

VDP asserts that the trial court erred when it awarded only $16,000,000 for the Property, Additionally, the Port argues that the trial court erred by not awarding damages for the debris removal and further erred in limiting expert testimony and awarding interest on the funds that were held in the registry of the court.

Property Valuation

Once the trial court found that' the expropriation served a public purpose, it then had to determine the valuation that would provide just compensation .to the landowners. In accordance with the constitutional- provisions governing expropriations, a property owner must be “compem sated to the full extent of his j8loss”[16] Commonly in expropriation- cases, just compensation is- determined by the fair market value of the property.
When making, a fair market value determination in an expropriation case, the highest and best usé of the property must be established.'-Several'factors’are considered in a highest and best use analysis including:
Market demand, proximity to- areas already developed in a compatible manner with the intended use, economic development in the area, specific plans of' business and individuals, including action already taken to develop the land for that use, scarcity of the land available for *634 that use, negotiations with buyers interested in the property taken for a particular use, absence of offers to buy the property made by the buyers who put it to the use urged,- and the use to which the property was being put at the time of the taking.[17]
Additionally, the presumption is that the use at the time of expropriation is the highest and best use. However, that presumption can be overcome if the landowner proves that the property could realistically be used in a more valuable way in the not too distant future.[18] .
The trial court’s reasons for judgment outlined the evidence relied upon to determine the appropriate value to place on the Property, starting with the ongoing negotiations between the Port and VDP. The first offer made by the Port in 2007 was for $10,000,000, which was based on an appraisal that was performed on behalf of the Port and with VDP’s approval. VDP rejected that offer and eventually countered with $14,000,000, and the Port accepted that price. There were some issues on VDP’s conditions and terms which prevented the Port from moving forward. Then in 2010, after another appraisal was performed, the Port offered $16,000,000, and VDP countered with $35,000,000.
[¡At trial, several expert opinions were presented regarding the value, of the Property. VDP’s experts valued the property from $51,000,000 to $67,487,449,[19] while both of the Port’s appraisers arrived at a market value of $16,000,000. Generally, fair market value is considered the price a buyer is willing to pay based on all likely uses of the property, but those uses cannot be “speculative, remote or contrary to law.”[20] In assessing the experts’ opinions and reports, the trial court noted that VDP’s experts’ analysis proved to be ‘questionable,” “flawed,” and at times “inaccurate.” When evaluating expert opinions, the fact finder has broad discretion in determining the effect and weight.to be given expert testimony.[21] The fact finder can either accept or reject any or all of an opinion expressed by an expert.[22]
In further evaluation of the evidence presented, the trial court considered the physical constraints of the Property.[23] Taking into account the condition of the Property at the time of the expropriation and the possible uses that were realistic in the “not too distant future,” the Port’s appraisers testified that their appraisals took into account the highest and best use of the Property as being a layberthing facility, with some topside repair, and limited cargo operations. The trial court concluded that the Port’s experts presented a solid analysis based on credible facts and' presumptions.
| ipThe appropriate review of the trial court’s factual findings in civil cases is *635 the manifest error-clearly wrong standard.[24] On appeal, it is this Court’s function to review the record in its entirety to see if the trial.court’s factual conclusions were reasonable.[25] If the record supports the factual determinations, this Court cannot reverse those findings merely because we would have found differently.[26] Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.[27] Thus, upon a thorough review of this record, we cannot find, that the trial court was.manifestly erroneous or clearly wrong in its ruling that $16,000,000 was just compensation for the Property.

Exclusion of Expert Economist’s Testimony

In this assignment, the Port seeks to have this Court overrule the trial court’s decision to exclude Dr. Timothy Ryan’s expert opinion, regarding the market value of VDP’s business and earnings. Evidentiary rulings by the trial court are reviewed under an abuse of discretion standard.[28]
In ruling to limit the testimony, the trial court referred to an earlier ruling made in the case where it was determined that Dr. Ryan, an economist, could not testify as to the valuations and appraisals of the Property. The record indicates that Dr. Ryan’s^ testimony was to be limited to his area of expertise which did not |n include evaluating the value of businesses or real estate. Therefore, we do not find that trial court abused its discretion in limiting the testimony.

Damages for Debris Removal

The Port sought damages for the removal of what was' characterized as debris trader La. C.C. Art. 2315.
The record contains substantial testimony and photographic evidence regarding the fill on the Property. VDP did not dispute the fact that fill had been spread throughout the property dating back to the 1980s. Donald Dieudonne, the corporate representative for VDP, testified that VDP had been receiving fill for decades and using it to raise some of the lower areas of the Property. He claimed that after the expropriation the practice of receiving fill continued until the Port objected in June of 2012. Mr, Dieudonne’s testimony was that once the Port objected VDP did not authorize any further fill to be deposited.
Mr. Dieudonne’s ■ statements were not directly contradicted. A review of the testimony and evidence presented, failed to establish with any certainty the quantity of fill that,was deposited after the expropriation or that VDP continued to authorize such activity after the Port objected. Additionally, there was no evidence indicating the Property was damaged or that removal was required. ' '
Further there is no precedent set for allowing the Port to offset its purchase price for the remediation of the Property after the purchase. To the contrary, in State, DOTD v. Todd, the court denied DOTD’s cause of action for reimbursement for a remediation required by the Department of Environmental Quality to remove *636 contaminated soil and ground water on expropriated property.[29]
| ^Consequently, .this Court cannot find error with the trial court’s determination that the Port did not prove its claims for damages against VDP.

Interest

The Port maintains that the trial court erred in awarding'VDP judicial interest on the funds that remained in the registry of the court. The Port relies on La. R.S. 19:156, to argue that the award of judicial interest on funds deposited in the registry of the court, in an' expropriation case, is statutorily prohibited.[30] Under the facts of this case, we disagree.
Although the Port deposited the estimated just compensation of $16,000,000, it later requested that the trial court withhold $1,900,000 of the deposit pending the outcome of a claim against VDP for an offset. It was approximately three' years later that the trial court determined that the Port could not prove it was owed an offset.. The landowners were deprived of the use .of funds • that were deposited as estimated just compensation for the expropriation, due to .the Port’s filing of a claim for offset. Effectively, it was as if the money was never deposited. As such, it is subject to the statutory 5% annual interest provided for by La. R.S. 19:155, less any interest accrued while on deposit. Accordingly, the trial court’s ruling in this respect is amended.

December 1, 2015 judgment (Costs and Attorney’s Fees)

The Port challenges this judgment arguing that the trial court erred in not awarding costs to the Port because it offered the true value of the Property prior to hsthq beginning of the litigation. Further, the Port argues that the trial court erred in denying attorney’s fees based upon VDP’s bad faith litigation.
For the Port’s argument regarding its entitlement to costs including expert costs, it relies on La. R.S. 19:12. At the time of the filing for expropriation, in 2010, La. R.S. 19:12 provided that “[i]f a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation,' the costs of the- expropriation proceedings shall be paid by the owner.”
The amended version of the statute which went into effect on August 1, 2012, reads, “[i]f the highest amount offered pri- or to -the filing of the expropriation suit is equal to or more than the final award, the court may, in its discretion, order the defendant to pay all or a portion of the costs of the expropriation proceedings.”
The obvious difference in the two versions of the statute is the discretion given to the trial court. However, for this case we need only focus on the condition that is consistent in both, which is that a tender must occur “prior to” or “before” the filing of the expropriation.
,The jurisprudence is clear,, because the assessment of costs pursuant to La. R.S. 19:12 impacts, the landowner’s guaranteed right to just compensation under La. Const. Art. 1, § 4, the statute roust *637 be strictly construed.[31] According to Black’s Law Dictionary, a tender is defined as an unconditional offer Qf money.[32] Although it is undisputed that there were ongoing negotiations for the Property over many years, all offers prior to the $16,000,000 offer are irrelevant to the assessment of costs. Also, undisputed is that the deposit of $16,000,000 in thé | ¶ ¿registry of the court was not made prior to the institution of the suit. In reviewing the record and more specifically the testimony of Mr. Dieudonne, the offer from the Port for $16,000,000 contained numerous conditions and terms favoring the Port, including the ability to withdraw from the sale with a full refund of the deposit. A strict reading of the statute together with the applicable jurisprudence and the facts surrounding the offer to purchase in this ease, we find it was not a tender for the purpose of assessing costs. ■

Attorney’s Fees

In addition to requesting costs, the Port also seeks to recover attorney’s fees pursuant to La. C.C.P. Art. 863(B).[33] The Port maintains that VDP pursued the litigation in bad faith because they were well aware that the Property was only worth $16,000,000.
The trial court, in its discretion, declined to award eosts to the Port in accordance with-La. R.S. 19:12. Additionally, the trial : court specifically found that VDP did not act in bad faith by pursuing this litigation. Therefore, there'was no violation of article 863, and attorney’s fees were denied. We find no error hi the trial court’s ruling.
I mConclusion
For the reasons discussed, the trial court’s ruling regarding judicial interest on VDP’s $1,900,000 that remained in the registry of the court at the Port’s request is affirmed as amended to reflect that interest is due .in accordance with La. R.S. 19:166 with an offset for any interest already received. In all other respects the rulings of the trial court are affirmed.
AFFIRMED AS AMENDED
LOBRANO, J., DISSENTS AND 'ASSIGNS REASONS

. March 21, 2012 Judgment.

. July 31, 2015 Judgment.

. December 1, 2015 Judgment.

. See State, DOTD v. Restructure Partners, L.L.C., 07-1745 (La.App. 1 Cir. 3/26/08), 985 So.2d 212.

. See, La. Const. Art. I, § 4 and Art. VI, § 21.

. La. Const. Art. I, § 4.

. The pertinent provisions of § 4. Right to Property read as follows:
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.
(2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, “public purpose" shall be limited to the following:
* * ⅜
(vi) Public ports and public airports to facilitate the transport of goods or persons in domestic or international commerce.
[[Image here]]
(3) Neither economic development, enhancement of tax revenue, or any incidental benefit to the public shall be considered in determining whether the taking or damaging of property is for a public purpose pursuant to Subparagraph (1) of this Paragraph or Article VI, Section 23 of this Constitution.
[[Image here]]
(6) No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction.
La. Const. Art. I, § 4 (emphasis added).

. La. R.S. 34:1708 states:
A. The board is authorized to acquire by purchase, donation, expropriation, appropriation, or otherwise any lands in the district needed for railways, wharves, sheds, buildings, canals, channels, and other facilities required for the operation of the board and to be owned and operated by the board except those pipelines in operation on May 1, 2008. The board may also provide that payments for such lands be made out of funds under its control not otherwise specifically appropriated.
B. The board is further authorized to receive by gift, grant, donation or otherwise, any sum of money, aid or assistance from the United States, the state of Louisiana, or any of the political subdivisions thereof, for the purpose of carrying out the objects and purposes of this Chapter.
C. In addition to its power to acquire such property in the various modes set out here-inabove, the board shall also have power to expropriate property within the district in the same manner applicable to Louisiana State University and Agricultural and Mechanical College and the Department of Transportation and Development under the provisions of R.S. 19:141 et seq.

. Amemdment V of the takings clause mandates that just compensation be paid for private property taken for public use.

. La. R.S. 34:1701.

. La. R.S. 34:1705 reads:
A. (1) The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall have the sole power to regulate, pursuant to R.S. 34:1703, the domestic, coast-wise, and intercoastal commerce and traffic of said district and all commerce and traffic within the district including cargo bound for and/or in, and/or coming out of international commerce where such commerce and traffic is conducted by or through a facility wholly owned by the district.
(2) The board of commissioners-of the St. Bernard Port,' Harbor and Terminal District shall also have and exercise the powers granted to deep water port commissions pursuant to R.S. 9:1102.l in all cases where riparian owners of property on navigable rivers, lakes, or streams within said district desire to construct wharves, buildings, or improvements- on the batture or banks owned by them, which are designed for and/or used for such commerce and traffic domestic, coastwise, or intercoastal commerce, including cargo, bound for and/or in and/or coming out- of international commerce where such is conducted by or through a facility wholly owned by the district.
B. The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall have the right to enter into any and all contracts and agreements with the. parish of St. Bernard, the board of commissioners of the Port of New Orleans, and any other public subdivisions or authorities relative to any and all matters which lie within the jurisdiction of the district and the board of commissioners thereof.

. La. R.S. 34:1708 states:
A. The board is authorized to acquire by purchase, donation, expropriation, appropriation, or otherwise any lands in the district needed for railways, wharves, sheds, ’buildings, canals, channels, and other facilities required for the operation of the board and to be owned and operate^ by the board except those pipelines 'in operation on May 1, 2008. The board may also provide that payments for such lands be made out of funds under its control not otherwise specifically appropriated.
B. The board is further authorized to receive by gift, grant, donation or otherwise, any sum of money, aid or assistance from the United States, the state of Louisiana, or any of the political subdivisions thereof, for the purpose of carrying out the objects and purposes of.this Chapter.
C. In addition to its power to acquire such property in the various modes set out here-inabove, the board shall also have power to expropriate property within the district in the same manner applicable to Louisiana State University and Agricultural and Mechanical College and the Department of Transportation and Development under the provisions of R.S. 19:141 etseq.

. See, La. R.S. 34:1701 etseq.

. 15-0768, p. 8 (La.App. 4 Cir. 3/16/16), 186 So.3d 1282, 1287.

. Id.

. La. Const. Art. I § 4

. Exxon Pipeline Co. v. Hill, 00-2535, 00-2559, p. 8 (La. 5/15/01), 788 So.2d 1154, 1160 (citations omitted).

. Id.

'. These values were based on the property being developed into a multimodal, heavy- ■ cargo, international trade facility.

. Exxon Pipeline, 788 So.2d at 1160 (citing West Jefferson Levee Dist. v. Coast Quality, 93-1718 (La. 5/23/94), 640 So.2d 1258).

. Cooper v. Bouchard Transp., 12-0868, p.6 (La.App. 4 Cir. 3/27/13), 140 So.3d 1, 7 (citations omitted).

. Id.

. The trial court stated, among other things, that limitations exist as to the type of cargo that could be stored due the Property’s proximity to a school- and residential area. The trial court also found that the Property was limited due to its configuration, which included several acres of land that was not owned by VDP.

. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, p. 8-9 (La. 12/8/15), 193 So.3d 1110, 1115-16 (citations omitted).

. Id.

. Id.

. Id.

. 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 12-1014, p. 19 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1163 (citing In re Succession of Holzenthal, 12-0211, p. 8 (La. App. 4 Cir. 9/26/12), 101 So.3d 81, 87).

. 01-0374 (La.App. 3 Cir. 12/4/02), 834 So.2d 1114.

. La. R.S. 19:155 reads:
The judgment' rendered therein shall include, as part of the just compensation awárded, interest at the rate of five per centum per annum on the amount finally awarded as of the date title vests in the plaintiff to the date of payment; but interest shall not be allowed on so much thereof as has been deposited in the registry of the court.

. See, South Central Bell Tel. Co. v. Marsh Inv. Corp., 344 So.2d 6 (La.App. 4th Cir. 1977); Southern Natural Gas Co. v. Poland, 406 So.2d 657 (La.App. 2nd Cir. 1981); and Louisiana Gas Purchasing Corp. v. Sincox, 368 So.2d 816 (La.App. 2nd Cir. 1979).

. Black’s Law Dictionary 1606 (9th ed. 2009).

. La. C.C.P. Art. 863 (B),reads:
B, Pleadings need not be verified or accom-paniéd by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or patty shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following;
(1) The pleading is not being presented-for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
(2) Each claim, defense, or other legal assertion in the pleading, is warranted by existing law or by. a nonfrivolous argument for the extension, modification, or reversal of existing law.
(3) Each allegation or other factual assertion in the pleading has evidentiary support .or, for a specifically identified allegation or .factual assertion, is likely to have evidentia-ry support after a reasonable opportunity for further investigation or discovery.
(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.