CRICHTON, Justice
 

 Although the Louisiana Constitution generally restricts the government from expropriating private property, it provides broad exceptions for public port authorities. To Louisiana's maritime industry, public ports are critical. Due to market demands and increasing global competition, public ports must expand in order to compete. The Louisiana Constitution therefore provides that the government
 can expropriate property for "[p]ublic ports ... to facilitate the transport of goods or persons in domestic or international commerce." La. Const. art. I, § 4 (B)(2)(b)(vi).
 

 We granted the writ in this matter to determine whether St. Bernard Port, Harbor & Terminal District's (the "Port") expropriation of property owned by Violet Dock Port, Inc., L.L.C. ("Violet") on the Mississippi River satisfies the "public purpose" requirement of art. I, § 4(B)(1) of the Louisiana Constitution and, further, whether it violates the business enterprise clause of art. I, § 4(B)(6) of the Louisiana Constitution. For the reasons that follow, we find that the record demonstrates that the Port's expropriation was for the public purpose "to facilitate the transport of goods or persons in domestic or international commerce" and not for the constitutionally prohibited purpose of operating Violet's enterprise or halting competition with a government enterprise. We therefore affirm the court of appeal holding that the expropriation was constitutional. However, we also find the trial court made a legal error in setting the just compensation due to Violet under art. I, § 4(B)(1), and further find that the court of appeal failed to correct that error. We therefore remand this matter to the court of appeal solely for the purpose of fixing the amount of just compensation based on the evidence in the record and in accordance with the principles set forth in this opinion.
 

 BACKGROUND
 

 Maritime trade is a primary mode of transport for national and international commerce. In the last century, the maritime industry has expanded and modernized. This includes advancements such as containerization and other improvements that have ushered in super tankers and mega ships. In other words, more and larger ships now transport greater amounts of cargo. Such advancements have made public ports, like the St. Bernard Port, a virtual necessity. To accommodate these changes, ports must expand and adapt.
 
 [1]
 

 The Port, a public cargo facility in St. Bernard Parish,
 
 [2]
 
 has consistently experienced an increased demand for cargo handling since at least 2001. Through a lease with a Marine Terminal Operator ("MTO"), Associated Terminals, the Port handles several types of cargo, and has remained one of the busiest ports in the country. For example, from 2007-2009, the Port's cargo included 37% of all the ferro alloys imported into the United States, 37% of the barite, 10% of the urea, and 3% of the potash. However, the Port began experiencing a shortage of space, and its customers requested both additional space and a liquid cargo facility. Ultimately, by 2008, the Port was operating at
 near capacity, and determined that if it could not meet its customers' demands, its operations would suffer. As a result, the Port sought to expand in order to meet these growing needs.
 

 To support its expansion, the Port identified approximately 75 acres of land along the Mississippi River (the "Property"). The Port began, as early as 1985, the arduous process of locating suitable property. Seven or eight different sites were investigated, and factors such as having a nearby railroad and land for ingress and egress of trucks were paramount. Compared to other sites along the river, the Property had many of these critical attributes. The Port determined that the Property's relatively straight segment and deep water could handle large cargo ships better than other sites. Further, there was enough land between the nearby levee and the existing rail line for the Port to place a cargo facility. At other sites, the levee was too close to the rail line, which would require the Port to relocate the rail line in order to build a cargo facility. According to a representative from Associated Terminals, the Port's MTO, there was no other space in St. Bernard Parish where a bulk terminal facility could be constructed on the river.
 

 Violet, a limited liability company, owned the Property. At the date of the expropriation, the Property had five berths, which were used for berthing and mooring vessels (
 
 i.e.
 
 , what a Violet representative described as a "parking lot for ships") and topside repairs.
 
 [3]
 
 Violet also had a contract with the Military Sealift Command, a civilian branch of the United States Navy (the "Navy"), to layberth and service oceangoing ships. In the ten years before the expropriation, Violet's cargo operations were described as "negligible."
 

 A five-member Board of Commissioners, appointed by the Governor, makes decisions for the Port.
 
 [4]
 
 In 2007, the Port offered $10 million to purchase the Property, which Violet rejected. In 2008, the parties tentatively agreed to a sale of the property for $14 million. Based on this agreement, in order to purchase and develop the property, the Port applied for funding to the Louisiana Department of Transportation & Development's Port Priority Program. In 2010, the Port was awarded a $15 million grant to acquire the Property.
 

 The Port then had the Property reappraised and, as a result, informed Violet it would pay the newly appraised fair market value of $16 million. Violet rejected the Port's offer, and instead sought $35 million. After this, negotiations failed, and the Port initiated the expropriation proceedings.
 

 PROCEDURAL HISTORY
 

 The Port initiated this expropriation on December 22, 2010, under the quick-take expropriation provisions of La. R.S. 19:141,
 
 et seq.
 
 and deposited $16 million into the registry of the district court. According to the petition, the expropriation was for the purpose of expanding the Port's current port facilities to handle dry-bulk and liquid-bulk commodities. The petition stated the construction of development of the Property would occur in three phases and take approximately eight to ten years to complete. During that time, the petition stated the Port intended to "enter into a
 new contract with [the Navy] for its continued use of the Violet Port during Phase I of the acquisition and development of the [Property]." The petition further stated the expropriation would "create jobs and benefits to the citizens of St. Bernard Parish."
 

 Violet thereafter removed the case to federal court and moved to dismiss the petition for expropriation. Violet's primary basis for alleging federal jurisdiction was under the federal officer removal statute,
 
 28 U.S.C. § 1442
 
 (a)(1).
 
 See
 

 St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC
 
 ,
 
 809 F.Supp.2d 524
 
 , 529 (E.D. La. 2011) (Vance, C.J.) ("
 
 St Bernard Port Federal
 
 "). Because of Violet's contract with the Navy, Violet argued the Port's expropriation was for an act under color of federal law.
 
 [5]
 

 Id.
 

 at 531
 
 . However, to trigger federal jurisdiction, Violet needed to prove there was a causal nexus between the expropriation and Violet's federal activity with the Navy contract.
 

 Id.
 

 Chief Judge Sarah Vance rejected this argument, finding that Violet failed to prove this nexus:
 

 Although Violet asserts that [the Port] is, in fact, expropriating the property primarily to take over performance of its contract with the [Navy], that argument does not explain [the Port's] expropriation of the entirety of Violet's property, as Violet's contract with [the Navy] implicates only one of Violet's five berths and only a fraction of the 70 acres [the Port] seeks to expropriate. Nor has Violet submitted anything, other than its own characterization, to suggest that acquisition of the [Navy] property was the primary motivating cause of this 70 acre expropriation.
 

 Id.
 

 at 531
 
 (footnote omitted). The federal court remanded the case to state court.
 

 Id.
 

 at 538
 
 .
 

 Following remand, the trial court held a hearing to consider the public purpose of the expropriation. The trial court heard testimony, reviewed the evidence, and evaluated the credibility of the witnesses. At the hearing, Violet again argued that the Port's true purpose in expropriating the Property was to take over the Navy lease. The Port contended otherwise. According to the Executive Director of the Port: "As far as the lease with the Navy ... it's an afterthought.... [T]hat's certainly not one of our goals." Similarly, a representative from Associated Terminals, the Port's MTO, stated: "[T]he best news for [us] is that the Navy would leave, because we want the use of the berth to handle cargo, and that's the best berth, the one that they're [the Navy] presently tied to." He further stated: "We're not in the ship berthing business. We're in the cargo business." In contrast, Violet's representative stated that in the decade before the expropriation it had handled "probably no cargo .... There may have been some negligible cargo."
 

 After the hearing, the trial court rejected Violet's argument that the expropriation was for the purpose of taking the Navy lease. In granting the Port's petition, the trial court stated that the Port took the Property to "build and operate a terminal to accommodate transport of liquid and solid bulk commodities into national and international commerce to and from St. Bernard." This judgment was based on the trial court's firsthand credibility determinations after hearing testimony from various witnesses. Among these was of the Port's Executive Director, who testified
 about the Port's need for space. According to his testimony, the Port's cargo tonnage in the previous ten years had grown sevenfold. Consistent with this evidence, the trial court also stated the expropriation was a "logical extension of port services in St. Bernard." From this ruling, Violet applied for writs of certiorari. Both the Fourth Circuit Court of Appeal and this Court denied Violet's writ applications.
 
 St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC
 
 , 12-0417 (La. App. 4 Cir. 5/16/12); 12-1122 (La. 5/30/12),
 
 90 So.3d 419
 
 .
 

 The case proceeded to a trial on valuation. The trial court found just compensation to be $16 million.
 
 [6]
 
 At trial, the Port's experts testified that the highest and best use of the Property was continued layberthing plus limited aggregate operations, valuing the Property at $16 million. Violet's experts maintained that the highest and best use of the Property was as a cargo facility. Violet argued that it should be compensated between $51 million and $67 million.
 
 [7]
 
 The trial court rejected the highest and best use and valuation opinions of Violet's experts, citing physical limitations that it alleged rendered the Property unsuitable for very large-scale cargo use, including: (a) water depth at the docks; (b) proximity to school and residential areas; (c) limited amount of uplands available for cargo; and (d) configuration of the Property. Consequently, the trial court found just compensation to be $16 million.
 

 On appeal, a divided court of appeal panel affirmed. As to the Port's petition for expropriation, the majority stated: "Although the authority granted to the ports of Louisiana in the expropriation of private property is exceptionally broad, it is supported by the constitution and statutes of the State."
 
 St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC
 
 , 16-96, 16-262, 16-331, p.7 (La. App. 4 Cir. 12/14/16) ("
 
 St. Bernard Port I
 
 "),
 
 229 So.3d 626
 
 . In affirming the trial court's just compensation award, the majority found the record supported the trial court's ruling.
 
 Id.
 
 at p.10. It further noted that '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong."
 
 Id.
 
 One judge dissented, finding that the expropriation was unconstitutional.
 
 Id.
 
 at p.15 (Lobrano, J., dissenting). After Violet sought rehearing, the court of appeal denied the request.
 
 St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC
 
 , 16-96, 16-262, 16-331, p. 7 (La. App. 4 Cir. 2/8/17), --- So.3d ---- ("
 
 St. Bernard Port II
 
 "),
 
 2017 WL 526160
 
 .
 

 This Court granted Violet's writ application. 17-0434 (La. 5/26/17),
 
 221 So.3d 853
 
 .
 

 DISCUSSION
 

 Authorization for expropriations by a government body-and important limitations placed upon those authorizations-are found in both the federal and state constitutions.
 
 See
 

 South Lafourche Levee Dist. v. Jarreau
 
 , 16-0788, 16-0904, p. 8-9 (La. 3/31/17),
 
 217 So.3d 298
 
 , 305,
 
 cert. denied
 
 , --- U.S. ----,
 
 138 S.Ct. 381
 
 ,
 
 199 L.Ed.2d 279
 
 (10/31/17). More specifically, the Fifth Amendment of the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment, provides: "No person shall ... be
 deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." Likewise, the Louisiana Constitution provides "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation ...." La. Const. art. I, § 4 (B)(1). Therefore, under both Constitutions, any expropriation must be for a "public purpose"
 

 and
 

 provide "just compensation."
 

 To review these determinations, we start with the constitutional provisions at issue.
 
 Arrow Aviation Co., L.L.C. v. St. Martin Parish Sch. Bd. Tax Sales Dept.
 
 , 16-1132, p.4 (La. 12/6/16),
 
 218 So.3d 1031
 
 , 1035 ("When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect."). We then review the record to determine whether the trial court's factual findings were manifestly erroneous.
 
 See
 

 Exxon Mobil Pipeline Co. v. Union Pac. R. Co.
 
 , 09-1629, p.12 (La. 3/16/10),
 
 35 So.3d 192
 
 , 200 ("Whether the expropriator's purpose is public and necessary is a judicial determination that will not be reversed on appeal absent manifest error.").
 

 Public Purpose
 

 In 2005, the United States Supreme Court decided the case
 
 Kelo v. City of New London
 
 ,
 
 545 U.S. 469
 
 ,
 
 125 S.Ct. 2655
 
 ,
 
 162 L.Ed.2d 439
 
 (2005) which expressly upheld a taking for economic development purposes.
 
 [8]
 
 Following
 
 Kelo
 
 , in 2006, voters of Louisiana approved a constitutional amendment enumerating permissible "public purposes" for a political subdivision to expropriate private property. As amended, art. I, § 4 provides, in pertinent part:
 

 Section 4. (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
 

 (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.
 

 (2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, "public purpose" shall be limited to the following:
 

 * * *
 

 (b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:
 

 * * *
 

 (vi)
 

 Public ports and public airports to facilitate the transport of goods or persons in domestic or international commerce
 

 .
 

 * * *
 

 (6) No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise....
 

 (Emphasis added.)
 

 In other words, the Louisiana Constitution expressly includes "public ports" as an
 enumerated "public purpose." Specifically, a public purpose is defined as "[p]ublic ports . . to facilitate the transport of goods or persons in domestic or international commerce." La. Const. art. I, § 4 (B)(2)(b)(vi).
 
 [9]
 

 Consistent with the authority given to public ports to expropriate property, the trial court made a factual determination that the Port's purpose for expropriation was to "build and operate a terminal to accommodate transport of liquid and solid bulk commodities into national and international commerce to and from St. Bernard." This purpose falls squarely within the constitutional definition of "public purpose" for public ports. La. Const. art. I, § 4 (B)(2)(b)(vi). Based on the record before us, we cannot say that the trial court's finding was manifestly erroneous, and we therefore affirm the finding that this expropriation was for a public purpose. We also find that this expropriation satisfies the broad definition of public purpose under federal law.
 
 See
 

 Kelo
 
 ,
 
 545 U.S. at 479
 
 ,
 
 125 S.Ct. 2655
 
 ("Without exception, our cases have defined that concept broadly, reflecting our longstanding policy of deference to legislative judgments in this field.").
 

 Business Enterprise Clause
 

 Violet also argues that, even if there was a "public purpose" here, the expropriation violates La. Const. art. I, § 4 (B)(6), known as the "business enterprise clause." The legislature did not change this provision as part of the 2006 amendments. La. Const. art. I, § 4 (B)(6) states:
 

 (6) No business enterprise or any of its assets shall be taken
 

 for the purpose of
 

 operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction.
 

 (Emphasis added.)
 

 The business enterprise clause requires the court to determine if the expropriation was "for the purpose of" operating an enterprise or halting competition with a government enterprise. On this point, the court of appeal majority held that the trial court was not manifestly erroneous in holding that the business enterprise clause does not apply here from a
 

 factual
 

 standpoint. Violet contests this holding, contending that the Port's expropriation was either to take Violet's revenue stream from the Navy lease or to halt competition with Violet's cargo operations, which it suggests were growing.
 
 [10]
 

 First, Violet argues that the purpose of the Port's expropriation was to take over Violet's revenue stream from the Navy lease. Yet testimony at trial was that the
 Navy lease was "an afterthought." Testimony further indicated that the "best news" for the Port's operation would be to use the Navy berth to further expand cargo operations. Our conclusion is buttressed by the fact that the lower courts and the federal court rejected similar arguments.
 
 See
 

 St. Bernard Port I
 
 ,
 
 229 So.3d at 632
 
 ("Violet Dock argues that the real purpose for the taking was so the Port could continue to operate its layberthing and cargo facility and obtain the Navy contracts in violation of La. Const. art. I, § 4 (B)(6).... We disagree.");
 
 St. Bernard Port II
 
 ,
 
 2017 WL 526160
 
 , at *1 (on rehearing) ("[W]e found that the facts and circumstances presented by this case simply did not satisfy the requirements of the restrictions of La. Const. art. I, § 4 (B)(6).");
 
 St. Bernard Port Federal
 
 ,
 
 809 F.Supp.2d at 531
 
 ("Nor has Violet submitted anything, other than its own characterization, to suggest that acquisition of the [Navy] property was the primary motivating cause of this 70 acre expropriation."). We likewise do so here.
 
 [11]
 

 Second, Violet argues that the purpose of the Port's expropriation was to halt competition. Though Violet argues its cargo operations were growing, the record shows that Violet's cargo operations were "negligible" and that it did not compete with the Port. Instead, generally speaking, the businesses of Violet and the Port were not comparable. Violet was in the layberthing business; the Port was in the cargo business. The record supports the trial court's conclusion that the Port experienced an increasing demand for maritime cargo operations, was at capacity, and sought to expand its cargo operations.
 

 To review the judgment we examine the entire record, but we will not set aside the trial court's judgment in absence of manifest error.
 
 Rosell v. ESCO
 
 ,
 
 549 So.2d 840
 
 , 844 (La. 1989). Here, the trial court's judgment followed an evidentiary hearing, where the trial court examined evidence, evaluated the credibility of multiple witnesses, and weighed the probative value of these assertions. As this Court has stated:
 

 It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 

 Id.
 

 at 844
 
 . Based upon our consideration of the record before us, we do not find the trial court's judgment to be manifestly erroneous or clearly wrong. We therefore affirm the lower court's judgment granting the Port's petition to expropriate.
 

 Just Compensation
 

 As noted above, the Louisiana Constitution provides that any expropriation must be for a "public purpose"
 

 and
 

 provide "just compensation." La. Const. art. I, § 4 (B)(1). It further states: "In every expropriation or action to take property pursuant to the provisions of this Section, ... , the owner shall be compensated to the full extent of his loss." La. Const. art. I, § 4 (B)(5). There is no specific formula set forth by the Legislature to aid courts in determining the "full extent of loss." The Constitution states only: " Except as otherwise provided in this Constitution, the full extent of loss shall include, but
 not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation."
 

 Id.
 

 [12]
 

 La. R.S. 19:9 provides limited guidance as to how to determine the "full extent of the loss." It states that the basis of the assessment of value of the property to be expropriated "shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any general or specific benefits derived by the owner from the contemplated improvement or work." La. R.S. 19:9(A).
 
 See also
 

 Exxon Pipeline Co. v. Hill
 
 , 00-2535, 00-2559, p.7 (La. 5/15/01),
 
 788 So.2d 1154
 
 , 1159-60.
 
 [13]
 
 The legislature and courts have developed rules that accept fair market value of the property as a relevant consideration in determining just compensation.
 

 Id.
 
 See also
 

 West Jefferson Levee Dist. v. Coast Quality Constr. Corp.
 
 , 93-1718 (La. 5/23/94),
 
 640 So.2d 1258
 
 , 1277,
 
 cert. denied
 
 ,
 
 513 U.S. 1083
 
 ,
 
 115 S.Ct. 736
 
 ,
 
 130 L.Ed.2d 639
 
 (1995). Fair market value, in turn, has consistently been defined as the price a buyer is willing to pay after considering all of the uses that the property may be put to where such uses are not speculative, remote or contrary to law.
 

 Id.
 

 In assessing the fair market value of an expropriated property, the Court considers the most profitable use to which the land can be put by reason of its location, topography, and adaptability.
 
 Exxon Pipeline
 
 , 00-2535, 00-2559, p.8,
 
 788 So.2d at 1160
 
 . This is known as the "highest and best use" doctrine.
 

 Id.
 

 Determining the "highest and best use" of land in expropriation cases involves several factors, including scarcity of the land available for that use and the use to which the property was being put at the time of the taking.
 

 Id.
 

 (setting forth various factors for courts to consider).
 
 See also
 

 State, through the Dept. of Highways v. Bitterwolf
 
 ,
 
 415 So.2d 196
 
 , 199 (La. 1982),
 
 State, through the Dept. of Highways v. Constant
 
 ,
 
 369 So.2d 699
 
 , 702 (La. 1979). It is "well established" that the current use of the property is presumed to be the highest and best use and the burden of overcoming that presumption by proving the existence of a different highest and best use based on a potential, future use is on the landowner.
 
 Exxon Pipeline
 
 , 00-2535, 00-2559, p.8,
 
 788 So.2d at 1160
 
 . Where a landowner overcomes the presumption, the landowner is entitled to compensation based on a potential use of the property, even though the property is not being so utilized at the time of the taking, provided he can show it is reasonably probable the property could be put to this use in the "not too distant future."
 
 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1273
 
 .
 

 In summary, in this case, the use to which Violet was putting the Property at the time of the expropriation-here, layberthing-is presumed to be the Property's highest and best use. Violet may overcome this presumption by demonstrating, by a preponderance of the evidence, that the property could be used in a different, more valuable way, that the potential use is not speculative, and that it could be undertaken in the "not too distant future."
 

 Exxon Pipeline
 
 , 00-2535, 00-2559, p.8-9,
 
 788 So.2d at
 
 1160-61 ;
 
 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1273
 
 . Here, the trial court found that Violet did not overcome that presumption.
 

 Turning to the standard by which we review the trial court's findings, in an expropriation proceeding, the trial court's factual determination as to the value of the property will not be disturbed in the absence of manifest error.
 
 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1277
 
 . "However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent
 
 de novo
 
 review of the record and determine a preponderance of the evidence."
 
 Evans v. Lungrin
 
 , 97-0541 (La. 2/6/98),
 
 708 So.2d 731
 
 , 735.
 
 See also
 

 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1278
 
 . Legal errors occur when a trial court applies incorrect principles of law and those errors are prejudicial; when such a prejudicial legal error occurs, the appellate court is required to review the record and determine the facts
 
 de novo.
 

 Evans
 
 ,
 
 708 So.2d at 735
 
 .
 

 Here, we find the trial court used the incorrect standard for evaluating experts' valuation testimony. Explaining why it accepted the Port's expert testimony rather than Violet's, the court stated: "It is the opinion of this Court that it does not have the discretion to 'split the baby' and arrive at a valuation somewhere in between" the two expert opinions. This is erroneous. A trier of fact is not required to make a binary choice and accept one side's testimony in its entirety, but is instead empowered to weigh strengths and weaknesses of expert testimony. To the extent the trial court held otherwise, this is legal error.
 
 See
 

 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1277
 
 ("The opinions of experts regarding valuation are advisory and are used only to assist the court in determining the amount of compensation due in an expropriation case.").
 
 See also
 
 ,
 
 e.g.
 
 ,
 
 State, Dep't of Transp. & Dev. v. Schwegmann Westside Expressway, Inc.
 
 , 95-1261, p. 6-7 (La. 3/1/96),
 
 669 So.2d 1172
 
 , 1176 ("[A] trier of fact does not have to accept in toto the testimony of any one group or group witnesses.").
 
 [14]
 
 Further, this error was prejudicial to Violet insofar as the trial court set just compensation in the exact amount put forward by the Port's experts.
 

 The court of appeal compounded this error by failing to identify it and conduct a
 
 de novo
 
 review.
 
 St. Bernard Port I
 
 ,
 
 229 So.3d at 634-35
 
 (noting that "we cannot find that the trial court was manifestly erroneous or clearly wrong in its ruling that $16,000,000 was just compensation for the property"). Instead, the court of appeal noted the general proposition that a factfinder has "broad discretion" in determining weight to be given to expert testimony.
 

 Id.
 

 While this is, of course, a correct statement of the law, it overlooks that the trial court was apparently operating under an incorrect belief about the extent of its ability to exercise that broad discretion.
 

 In summary, we find that the lower courts erred in the determination of just compensation. We therefore remand this matter to the court of appeal solely for the purpose of fixing the amount of just compensation based on the evidence in the record and in accordance with the principles
 set forth in this opinion.
 
 See
 

 Gonzales v. Xerox Corp.
 
 ,
 
 254 La. 182
 
 ,
 
 320 So.2d 163
 
 , 165 (1975) (remand to appellate court, rather than trial court, is appropriate when the appellate court has all the facts before it);
 
 Buckbee v. United Gas Pipe Line Co.
 
 ,
 
 561 So.2d 76
 
 , 87 (La. 1990).
 
 See also
 

 Exxon Pipeline
 
 , 00-2535, 00-2559, p.18,
 
 788 So.2d at 1166
 
 (Knoll, J., concurring) ("[V]aluation of property in expropriation cases is an open question and each case should be judged on its own under its individual facts and circumstances. Inadequate and inaccurate valuations run rampant and we must strive to find valuations that serve the purpose of protecting property rights while allowing public interests to be served."). Although this Court, like the court of appeal, has appellate jurisdiction of both law and fact and may perform an independent review and render judgment on the merits,
 
 see
 
 La. Const. art. V, § 5 (C), we prefer that the court of appeal perform the first appellate review of the entire record under the correct rule of law.
 
 Buckbee
 
 ,
 
 561 So.2d at 87
 
 .
 

 CONCLUSION
 

 We affirm the court of appeal's holding that the expropriation was constitutional. However, we reverse the court of appeal's holding on the amount of just compensation due to Violet under art. I, § 4(B)(1), after finding that the trial court made a legal error in its determination of just compensation and the court of appeal failed to correct that error. We therefore remand this matter to the court of appeal solely for the purpose of fixing the amount of just compensation based on the evidence in the record and in accordance with the principles set forth in this opinion.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Hughes, J., dissents for the reasons assigned by Weimer and Guidry, JJ.
 

 See generally
 
 Brief for Lake Charles Harbor & Terminal District, Greater Baton Rouge Port Commission, Plaquemines Port, Harbor and Terminal District, Board of Commissioners of the Port of New Orleans, Greater Lafourche Port Commission, Madison Parish Port Commission, Terrebonne Port Commission, Greater Krotz Springs Port Commission, the Port of South Louisiana, the Vinton Harbor & Terminal District, West Calcasieu Port, Caddo-Bossier Parishes Port Commission and Lake Providence Port Commission as Amici Curiae Supporting Respondents St. Bernard Port, Harbor & Terminal District at 4-6 (collecting sources).
 

 The Port is a deep-water public port and a political subdivision of the State of Louisiana. La. R.S. 9:1102.1 ; 34:1701,
 
 et seq.
 
 The Legislature has given the Port's board the power to develop, maintain, and promote the commerce and traffic of the port district within St. Bernard Parish, thus facilitating the transport of goods in domestic and international commerce.
 
 See
 
 La. R.S. 34:1703.
 

 In 2007, the Property consisted of four docks-three that were inspected and certified by the Navy for layberthing military ships and one that had deteriorated. In early 2010, Violet began constructing a fifth berth that would handle cargo. The construction of this fifth berth began in 2010, several years after Violet initially agreed to sell the Property to the Port.
 

 La. R.S. 34:1702(A).
 

 Section 1442(a)(1) permits removal only when "[t]he United States or any agency thereof ..." is "sued in an official or individual capacity for any act under color of such office."
 

 This July 31, 2015 judgment came after a trial, completed piecemeal, beginning on September 24, 2013 and concluding on November 11, 2014.
 

 To this Court, Violet argued that "just compensation" is $28,764,685.00 or $41,084,000.00, which were values that Violet derived from testimony of the Port's experts, having apparently abandoned the conclusions of its own experts.
 

 In
 
 Kelo
 
 , the Supreme Court held that the city of New London's proposed development plan to revitalize an economically distressed city, including its downtown and waterfront areas, qualified as a "public use" within the meaning of the Takings Clause of the Fifth Amendment to the United States Constitution.
 

 Public ports are granted additional constitutional authorization to expropriate property for the development of port facilities. Under art. VI, § 21(A), public ports can acquire land through expropriation and lease that land. This permits public ports to lease the expropriated property to another entity that physically handles the operations-a standard practice in the maritime industry.
 
 See also
 
 La. Const. art. I, § 4 (H)(1) (exempting "leases or operation agreements for port facilities" from the general prohibition in art. I, § 4(H)(1) that prohibits the State and its political subdivisions from selling or leasing property which has been expropriated).
 

 Violet also argues, as did the dissenting judge in the court of appeal, that the majority erroneously found the business enterprise clause to be limited by La. Const. art. VI, § 21. In other words, they claim the court of appeal erroneously held that any expropriation falling under art. VI, § 21 is exempted from every provision of art. I, § 4(B). But the majority never made such a holding, instead making a factual determination regarding the purpose for the expropriation. To the extent that the court of appeal opinion could be read otherwise, that interpretation is erroneous.
 
 See
 

 St. Bernard Port I,
 

 229 So.3d at 631-32
 
 .
 

 The Port's plan to lease the Property to another entity to operate does not change our analysis. Indeed, the Louisiana Constitution expressly anticipates such a lease. La. Const. art. VI, § 21 (A)(c).
 

 For a discussion of the legal history of this provision, see
 
 Exxon Pipeline Co. v. Hill
 
 , 00-2535, 00-2559, p.6 (La. 5/15/01),
 
 788 So.2d 1154
 
 , 1159.
 

 See also
 

 id.
 

 , 00-2535, 00-2559, p.18,
 
 788 So.2d at 1165-66
 
 (Knoll, J., concurring) ("Because of the important public policies and fundamental rights involved in expropriation cases, it would be helpful if the Legislature took action to clarify standards for valuation under La. R.S. 19:9.").
 

 We note that this does not change the general rule that the trial court has "much discretion in evaluating and determining the weight to be given to each expert."
 
 West Jefferson Levee Dist.
 
 ,
 
 640 So.2d at 1277
 
 . But here, the trial court's apparent misconception that he could not "split the baby" was prejudicial to Violet, insofar as it limited what the trial court believed to be just compensation due to Violet under the law.