Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,163-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CITY OF RUSTON, LOUISIANA                    Plaintiff-Appellee

versus

FAMILY INVESTMENT                            Defendant-Appellant
RESOURCES, LLC

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 54812

Honorable Bruce Edward Hampton, Judge

* * * * *

ROBERT E. SHADOIN                            Counsel for Appellant


WILLIAM S. CARTER, JR.                       Counsel for Appellee



* * * * *


Before COX, STEPHENS, and HUNTER, JJ.

**STEPHENS, J.**

Defendant, Family Investment Resources, L.L.C., appeals judgments from the Third Judicial District Court, Parish of Lincoln, State of Louisiana, ordering the expropriation of its property on behalf of Plaintiff, City of Ruston, and just compensation in the total amount of $144,000. Plaintiff answered the appeal, contesting the amount of just compensation ordered by the trial court. For the following reasons, the judgments of the trial court are affirmed.

## FACTS AND PROCEDURAL HISTORY

On January 18, 2011, the City of Ruston (the "City") filed a petition against Family Investment Resources, L.L.C. ("FIR"), seeking the expropriation of property owned by FIR (the "Property" or the "Lot"). The property, with an address of 507 North Trenton Street, Ruston, Louisiana, consists entirely of a parking lot. It is located adjacent to the new Ruston Police Department Headquarters Building (the "RPD building") purchased by the City in December 2008 and renovated by the City for the RPD in 2010. The City asserted the Property was necessary for additional parking for employees of and visitors to the RPD building.

FIR, whose members are Ben and Joy Annison, filed a motion to dismiss the City's petition on February 2, 2011. A hearing was held on July 14, 2011, and in an oral ruling issued on October 27, 2011, the trial court found the City had shown both a public and necessary purpose for the expropriation, rejected FIR's motion to dismiss, and ordered expropriation of the Property. A judgment of expropriation was rendered on December 2, 2011, but the determination of just compensation due FIR was reserved and deferred. Thereafter, the City deposited $119,000 into the registry of the

court, representing the amount of just compensation the City's appraisers determined was due FIR. This amount was subsequently withdrawn by FIR.

Trial on the issue of compensation began on December 12, 2016. FIR argued that the expropriation of the Lot had caused it to suffer additional loss or damage to adjacent properties that it owned or had ties to, specifically, a residential property located across the street from the Lot (the "Naylor House"), which is owned by the Annisons and frequently rented to college students, and the Moffett Haus Gift Boutique, L.L.C. ("Moffett Haus Boutique"), which operated periodically within property owned by FIR located adjacent to the Lot (the "Moffett House").[1] The City objected to all evidence on the grounds that neither the Annisons nor Moffett Haus Boutique was a party to the suit. After a series of continued dates, trial concluded on March 24, 2017, and the trial court issued written reasons for ruling on April 1, 2020, stating in pertinent part:

> [T]he Court finds the amount of just compensation owed by the City to FIR for the Parking Lot is $144,000.00. The Court finds no severance damage due to FIR. The Court further finds that FIR has failed to prove a "unity of use" between Naylor House, Moffett House, Moffett Haus Boutique, and the Parking Lot on the date of the taking of the Parking Lot by the City or that any special damages are due to FIR; therefore, any claims for additional compensation are denied.

Judgment in accordance with the written reasons was signed on July 22, 2020.[2] This appeal by FIR ensued, challenging both the expropriation and the compensation awarded. The City answered the appeal, urging error in

---

[1] The Naylor House is located at 509 North Trenton Street, and the Moffett House is located at 506 North Trenton Street.

[2] The judgment noted the parties' rights as to an award of attorney fees and court costs was not briefed by the parties and is reserved to them.

the trial court's award of compensation to FIR in excess of the amount deposited into the registry of the court.

## DISCUSSION

### *Expropriation*

In its first assignment of error, FIR asserts the trial court erred in finding that the expropriation served a public, necessary purpose and that the City did not act arbitrarily in selecting FIR's property for expropriation. FIR argues the evidence presented by the City showed it acted arbitrarily, took FIR's property as a matter of convenience rather than necessity, and never seriously considered alternatives to the expropriation of the Lot. We disagree.

Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner. La. Const. art. 1, § 4(B)(4); *Exxon Mobil Pipeline Co. v. Union Pacific R. Co.,* 2009-1629 (La. 3/16/10), 35 So. 3d 192. Prior to filing an expropriation suit, an expropriating authority shall attempt in good faith to reach an agreement as to compensation with the owner of the property sought to be taken and comply with all of the requirements of R.S. 19:2.2. La. R.S. 19:2. Where a price cannot be agreed upon with the owner, any municipal corporation of Louisiana may expropriate property whenever such a course is determined to be necessary for the public interest by the governing authority of the municipality. La. R.S. 19:102.

In *Exxon Mobil Pipeline Co. v. Union Pacific R. Co.*, *supra* at 200, the Louisiana Supreme Court set forth the standards for determining whether an expropriation is proper:

In challenges to the necessity of a taking, the landowner must prove that the legislatively-authorized expropriator exercised "its large discretion" arbitrarily, capriciously, or in bad faith. *Red River Waterway Com'n v. Fredericks*, 566 So. 2d 79, 83 (La. 1990). Whether the expropriator's purpose is public and necessary is a judicial determination that will not be reversed on appeal absent manifest error. *Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot*, 628 So. 2d 75, 78 (La. App. 3d Cir. 1993), *writ denied*, 1994-0168 (La. 3/18/94), 634 So. 2d 854. In the context of expropriation, "necessary" refers to the necessity of the purpose for the expropriation not the necessity for a specific location. *Calcasieu-Cameron Hosp. Serv. Dist.*, 628 So. 2d at 78. Once public necessity is established, the extent and the location of property to be expropriated are within the sound discretion of the expropriation authority and determination of same will not be disturbed by the courts if made in good faith. *Id.*

The criteria to be considered by the expropriator in determining the location and extent of the property to be expropriated include[s] factors such as costs, environmental impact, long range area planning, and safety considerations. *Red River Waterway Com'n*, 566 So. 2d at 83 (citing *U.S. v. Carmack*, 329 U.S. 230, 67 S. Ct. 252, 91 L. Ed. 209 (1946)). The amount of land and the nature of the acreage taken must be reasonably necessary for purpose of the expropriation, but it is not necessary "to show actual, immediate, and impending necessity for the expropriation." *City of New Orleans v. Moeglich*, 169 La. 1111, 126 So. 675, 677 (1930). The suitability of the property for expropriation is primarily a question of fact on which the judgment of the trial court will not be disturbed unless manifestly erroneous. *Board of Com'rs of New Orleans Exhibition Hall v. Missouri Pacific R. Co.*, 625 So. 2d 1070, 1073 (La. App. 4th Cir. 1993), *writ denied*, 1993-3088, 93-3100 (La. 1/28/94), 630 So. 2d 802.

Ruston Police Chief Steve Rogers testified that the police department relocated to its current location in downtown Ruston primarily because the department outgrew its previous building as the number of employees increased, and there was inadequate parking available for both officers and general staff. He testified the new RPD building has 30 parking spaces, two of which are handicap accessible parking spots, but there was still a shortage of parking for the current needs of the department. He noted that within the department, there are currently 38 departmental vehicles that are

4

continuously in use; six office personnel; six investigators; one parking patrol officer; administrative staff; the chief and assistant chief of police; and two captains, all of whom have either department or personal vehicles that should be parked onsite. Chief Rogers further stated that there were ten reserve officers, seven to eight reporting officers, and a minimum of three dispatchers with personal vehicles. He estimated that at a maximum, 60 parking spaces or more were required to accommodate the department at this time.

Chief Rogers also testified that because the department is also open to the public, its facility and parking area are often utilized by the public on a daily basis and for certain events. He stated there is a steady flow of members of the public that come in and out of the department on a daily basis, and onsite parking is required to accommodate those needs. Additionally, the department often participates in citywide functions such as the Peach Festival which, prior to the expropriation, required the department to request permission from FIR to use the Lot to meet the needs of the additional presence of members of the public. The department also often hosts academy training and other department-related events which require an increased number of parking spaces.

Chief Rogers further testified that the additional parking was necessary for the safety of the officers and members of the public. He stated that when the parking lot is full, officers and other people often park across the street, which he noted was particularly dangerous because of the high flow of traffic. Although Chief Rogers admitted he was not aware of any pedestrian injuries that occurred from crossing this street, he stated that because of the nature of the job, which often requires that officers carry

5

certain equipment, it is never ideal to have them cross a busy street, especially if there is an emergency.

Lewis Love, the city administrator, testified regarding several specific alternate locations surrounding the new RPD building that were considered as potential sites for additional parking but were ultimately dismissed either because of cost (developmental or otherwise), availability, or inadequate space.

In contrast, FIR offered only the testimony of Ben Annison, who simply expressed his opinion that RPD's expropriation of the Lot was not for a public and necessary purpose based solely on his personal observations of the frequent vacancies in RPD's current parking lot and familiarity with alternative parking options in the area.

The trial court's factual determination that the expropriation of the Lot was both necessary and for a public purpose is clearly supported by Chief Rogers' testimony as well as by the record as a whole. The evidence demonstrates the property will be used for parking of public and private vehicles in conjunction with publicly funded law enforcement activities, which clearly establishes a public purpose. Likewise, the evidence establishes both a current and future need for additional parking at the new RPD building. Adequate parking is necessary not only for police vehicles but also for other staff members employed by RPD and, importantly, for members of the public. There should never be a scenario where a citizen seeks the services of a police department but is deterred by lack of available parking. Furthermore, FIR failed to establish the Lot was expropriated arbitrarily, capriciously, or in bad faith. Accordingly, we find no error in the

trial court's judgment of expropriation. This assignment of error is without merit.

### *Just Compensation*

In its second and third assignments of error, FIR asserts the trial court erred by finding FIR was not entitled to additional compensation. Specifically, FIR argues the trial court erred by ruling that (1) the absence of the Annisons as a named party barred its entitlement to additional compensation, and (2) it was not entitled to additional compensation pursuant to the doctrine of unity of use. We disagree.

In every expropriation action to take property, the owner shall be compensated to the full extent of his loss. La. Const. art. I, § 4(B)(5). However, there is no specific formula set forth by the legislature to aid courts in determining the "full extent of loss." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 2017-0434 (La. 1/30/18), 239 So. 3d 243. The Louisiana Constitution states only, "Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation." La. Const. art. I, § 4(B)(5). Likewise, La. R.S. 19:9 provides limited guidance as to how to determine the "full extent of the loss." Louisiana R.S. 19:9(A) states:

> In determining the value of the property to be expropriated, and any damages caused to the defendant by the expropriation, the basis of compensation shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any general or specific benefits derived by the owner from the contemplated improvement or work.

Seeking additional compensation beyond the appraised value of the Lot, FIR offered testimony describing the Annisons' real estate puzzle, the pieces consisting of the Lot, the Naylor House, the Moffett House, and the Moffett Haus Boutique; how the Lot, particularly, was a key asset to all of the Annisons' future plans for the adjacent properties; and, the damages the Naylor House and Moffett House Boutique suffered due to the expropriation of the Lot. However, it is not necessary to consider such evidence because any claims for damage sustained by the Annisons or the Moffett Haus Boutique were not properly before the trial court, as they are not parties to the instant expropriation suit.

A juridical person is an entity to which the law attributes personality, such as a corporation. The personality of a juridical person is distinct from that of its members. La. C.C. art. 24. The general rule is that a corporation is a distinct legal entity separate from the individuals who own interests in the corporation. A corporation has the power to buy and sell property, make contracts, incur debt, sue and be sued. *Olson v. Olson*, 48,968 (La. App. 2 Cir. 4/23/14), 139 So. 3d 539, *writ granted*, 2014-1063 (La. 10/3/14), 149 So. 3d 275, and *writ denied as improvidently granted*, 2014-1063 (La. 1/28/15), 159 So. 3d 448.

FIR, the owner of the Lot and the only defendant in this suit, is a distinct legal entity from its members, the Annisons, and also from Moffett Haus Boutique, whose members are also the Annisons. If the Moffett Haus Boutique or the Annisons (with respect to the Naylor House) had wished to assert damages caused by the expropriation of the Lot, they could have intervened in the suit or filed a separate action against the City, but they cannot pursue their claims vicariously through FIR—a distinct legal entity.

8

FIR further asserts the unity of use doctrine entitles them to additional compensation based on damages suffered by the Naylor House and Moffett Haus Boutique as a result of the expropriation of the Lot. According to FIR, the lack of unity of ownership among the properties should not prohibit the application of the unity of use doctrine because strictly adhering to the above principles regarding the distinct personality of juridical persons fails to fairly recognize the realities underlying corporate ownership of land as applied to the concept of eminent domain. However, even if issues of unity of ownership were set aside, FIR's argument for the applicability of the unity of use doctrine nevertheless fails because there is in fact no unity of use among the three properties.

Where expropriation involves only one of a number of tracts of land, if a claimant can prove unity of use, *i.e.*, that all of the tracts were used for the same purpose as a single unit, then severance damages for all of the property will be recoverable. The determinative factors underlying the Louisiana unity of use doctrine are a unified use in fact, coupled with a legal right to effect that unified use, *i.e.*, ownership. *State Through Dept. of Highways v. Cefalu*, 288 So. 2d 332 (La. 1974); *City of Shreveport v. Noel Estate, Inc.*, 41,148 (La. App. 2 Cir. 9/27/06), 941 So. 2d 66, *writ denied*, 2006-2774 (La. 1/26/07), 948 So. 2d 171.

The evidence at trial showed that as of the date of the taking, the Lot was a vacant, unimproved lot sporadically rented to the public for parking during the annual Peach Festival. The Naylor House is a residential property the Annisons rent to college students. Notably, it includes on-site parking. The Moffett Haus Boutique is a limited liability company which owned and operated a gift shop/boutique/cafe seasonally from 2005 through 2008, from

9

within the Moffett House. The Moffett House is an improved residential property, with on-site parking, intermittently used as a residence.

The record clearly establishes these three properties/entities—the Lot, the Naylor House, and The Moffett Haus Boutique—were not used for the same purpose. Moreover, while their ownership might be intertwined for the single goal of benefiting the Annisons, these properties/entities by no means operate as a single unit. The factors necessary for application of the unity of use doctrine simply are not met in this case. Accordingly, as the unity of use doctrine is inapplicable, an award of severance damages is not appropriate since the Lot was expropriated in its entirety; the trial court did not err in finding FIR was not entitled to additional compensation. FIR's second and third assignments of error are without merit.

### *The City's Answer*

The city asserts in its answer that the trial court erred by finding FIR was entitled to just compensation in excess of the amount deposited into the registry. We disagree.

When there is conflicting testimony between witnesses and experts, it is the duty of the trial court to make credibility determinations. Determinations of credibility are within the purview of the trial court, and such determinations are not to be disturbed unless manifestly erroneous or clearly wrong. *Wells v. Town of Delhi*, 53,607 (La. App. 2 Cir. 3/3/21), 316 So. 3d 1257. A trier of fact is not required to make a binary choice and accept one side's testimony in its entirety, but is instead empowered to weigh strengths and weaknesses of expert testimony. *St. Bernard Port*, *supra*. In deciding to accept the opinion of one expert and reject the opinion

10

of another, a trial court can virtually never be manifestly erroneous. *City of Shreveport*, *supra*.

At trial, three expert appraisers testified regarding the fair market value of the Lot. FIR's expert, Keats Everett, opined the Lot was valued between $147,000 and $213,000, which amount included, in addition to the fair market value of the Lot, consideration that any replacement property would also require additional costs to pave the replacement lot. Mike Graham, an expert for the City, opined that just compensation for the Lot was $118,147. The City's second expert, David Volentine, testified just compensation for the Lot was $119,000. He further opined that if a new lot were to be purchased by FIR, it would cost an additional $31,500 to pour a parking lot to replace the expropriated Lot.

The trial court's thorough written reasons for ruling clearly show it considered the testimony of each expert and had an accurate understanding of the law regarding just compensation in expropriation cases. The trial court noted that although it accepted Volentine's fair market valuation of the Lot, it was likewise compelled by Everett's opinion that FIR would have additional costs for relocation. The trial court set the amount for those additional expenses at $25,000, bringing the total just compensation due FIR to $144,000.

In accordance with La. Const. art. I, § 4(B)(5), FIR is entitled to compensation to the full extent of its losses, including but not limited to the appraised value of the property and all costs of relocation, inconvenience, and any other damages incurred as a result of the expropriation of the Lot. The trial court appropriately exercised its discretion in weighing the testimony of the expert appraisers and setting an amount for relocation costs

11

in addition to fair market value.  Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's December 2, 2011, judgment of expropriation in favor of plaintiff, the City of Ruston, Louisiana, and July 22, 2020, judgment setting just compensation due to defendant, Family Investment Resources, L.L.C., are affirmed.  Costs of appeal are assessed one-half to plaintiff.  The other half of costs is not assessed.  *See* La. R.S. 13:4521.

**AFFIRMED.**